UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LURGI, INC.,

                    Plaintiff,

v.                                                5:09-MC-0024
                                                    (GTS/GHL)

NORTHEAST BIOFUELS, LP; BNP PARIBAS; and
WILMINGTON TRUST, FSB;

                    Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

HARRIS BEACH PLLC                      DAVID M. CAPRIOTTI, ESQ.
  Counsel for Plaintiff                        WENDY A. KINSELLA, ESQ.
One Park Place, 4th Floor                 DONALD J. MARTIN, ESQ.
300 South State Street
Syracuse, NY 13202

MENTER, RUDIN & TRIVELPIECE, P.C.      JEFFREY A. DOVE, ESQ.
  Counsel for Defendant Lurgi, Inc.
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1498

HISCOCK & BARCLAY, LLP                J. ERIC CHARLTON, ESQ.
  Counsel for Defendant Wilmington Trust, FSB
One Park Place
300 South State Street
Syracuse, NY 13202-2078

BOND, SCHOENECK & KING, PLLC        STEPHEN A. DONATO, ESQ.
  Counsel for Official Committee of Unsecured Creditors   SARA C. TEMES, ESQ.
One Lincoln Center
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court is a motion by Plaintiff Lurgi, Inc. ("Lurgi"), pursuant to Fed. R. Bankr. P. 7062 and 8005, for a stay (pending an appeal to this Court) of the March 21, 2009, Memorandum-Decision and Order of the Bankruptcy Court, which denied Lurgi's motion for a temporary restraining order and other injunctive relief. (Dkt. No. 5.) For the reasons set forth below, Plaintiff's motion for a stay is denied in part, and granted in part.

## I. RELEVANT BACKGROUND

### A. Factual History Giving Rise to Current Action

On June 29, 2006, Defendant Northeast Biofuels, LP ("NEB"), an ethanol manufacturer, entered into an Engineering, Procurement, Construction ("EPC") Agreement with Lurgi, a construction company. Article 3.3(c) of the EPC Agreement requires Lurgi to give NEB a standby Letter of Credit ("LOC") in the event that Lurgi chooses not to permit NEB to retain any progress payments, and gives NEB the right to present, and draw down on, that LOC only if Lurgi "breached its obligations under [the] [EPC] Agreement" and only in "the amount then due to [NEB]." In addition, when read together, Articles 3.6 and 18.2 of the EPC Agreement require that, if a dispute arising from the EPC Agreement is not resolved by agreement of the parties, then the dispute must be submitted to arbitration. Article 18.4 provides that the arbitration tribunal–whose decision shall be final and binding on the parties–shall determine any award of damages.

On October 12, 2007, Lurgi gave NEB the LOC issued by BNP Paribas (a private bank) in the amount of $3 million. Subsequently, the LOC was amended (and increased) four times (on November 13, 2007, February 4, 2008, March 19, 2008, and November 14, 2008), until it reached the amount of $8,111,994.69. Meanwhile, to help finance the construction of the

ethanol plant, NEB took out a secured loan from Harris, NA (a private bank).  As security, NEB granted Harris, NA a first-security interest in NEB's right, title and interest in all personal property of NEB, which apparently included all accounts, monies, and letter-of-credit rights.[1]

The target completion date of the plant was January 2008.  However, by August 2008, the plant was not yet complete, and could operate at only seventy-five percent (75%) of the targeted production rate.  On approximately August 24, 2008, NEB assumed operational control of the plant.  On October 13, 2008, Lurgi sent NEB a letter regarding what it described as "continuing serious problems Lurgi and NEB are encountering at the plant."  In the letter, Lurgi provided examples of what it believed to be NEB's "operational issues that are causing system failures."  Three days later, Lurgi sent NEB Contract Change Order ("CCO") No. 049, which sought to add forty-four and one-half (44.5) calendar days to Lurgi's performance period, and requested payment of an additional amount, later claimed to be $22 million.  Attached to this CCO was an eight-page, day-to-day summary of NEB's (alleged) deficiencies.  NEB did not sign this CCO.

Instead, on December 8, 2008, NEB served Lurgi with a two-page Notice of Default under the EPC Agreement, briefly listing Lurgi's nine (alleged) failures.  Lurgi responded by serving an arbitration demand, and filing a mechanics' lien against the project in the amount of $22 million.  NEB responded to the arbitration demand, and asserted claims of $65 million against Lurgi.

---

[1] Subsequently, Wilmington Trust, FSB, became the successor-in-interest to Harris, NA.

On January 15, 2009, NEB filed for bankruptcy under Chapter 11 (reorganization). NEB has been unable to obtain outside sources of financing to complete construction of the project. As a result, NEB intends to sell the facility at public auction, to be held on April 29, 2009.

### B. Procedural History Giving Rise to Current Action

On March 5, 2009, Lurgi filed an adversary proceeding in Bankruptcy Court, requesting (1) a temporary restraining order and preliminary injunction to prevent NEB from presenting the LOC to Paribas, or (2) in the event that the Court allows NEB to draw down on the LOC, that the Court provide one of three forms of alternative relief: (a) an Order requiring that the funds be segregated and escrowed in an account that is not held by Wilmington Trust, and that Wilmington Trust's security interest not attach to the funds without further Order of the Court; (b) an Order granting Lurgi a claim for a super-majority unsecured administrative expense pursuant to 11 U.S.C. § 364(c) in the cumulative amount of the draw-downs; or (c) an Order granting Lurgi a claim for an administrative expense pursuant to 11 U.S.C. § 503 in the cumulative amount of the draw-downs. Subsequently, NEB voluntarily agreed not to present the LOC to Paribas until the Bankruptcy Court held a hearing and issued its decision on Lurgi's motion.

On March 16, 2009, the Bankruptcy Court held a hearing on Lurgi's motion. On March 21, 2009, the Bankruptcy Court issued a Memorandum-Decision and Order denying Plaintiff's motion. Generally, in its decision, the Bankruptcy Court found that letter-of-credit law governs Lurgi's request for a preliminary injunction preventing a draw-down on the LOC. As a result, the Bankruptcy Court concluded that Lurgi (1) "failed to carry its burden of demonstrating that it is likely to prevail on the issue of whether the Debtor's right to draw down on the [LOC] is

subject to arbitration, nor on any fraud claim, which it failed to specifically allege," and (2) "failed to demonstrate in the balance of any respective hardships that it would be more greatly harmed than would the insolvent Debtor in this chapter 11 case." *See Lurgi, Inc. v. Northeast Biofuels*, No. 09-50012-mcr, Memorandum-Decision and Order, at 8-9 (Bankr. N.D.N.Y. filed March 21, 2009) (Cangilos-Ruiz, J.).

In addition, the Bankruptcy Court denied Lurgi's three alternative forms of relief sought. Specifically, it concluded that (1) an Order requiring NEB to segregate and escrow the LOC proceeds would be improper because "the same letter of credit principles apply regardless of whether an applicant attempts to prevent a draw down directly through an injunction or indirectly though 'similar relief' such as attachment," (2) an Order declaring that the security interest of Wilmington Trust does not attach to the LOC proceeds would be improper given Wilmington Trust's valid state contract rights, and (3) an Order granting Lurgi either a super-majority unsecured administrative expense claim pursuant to 11 U.S.C. § 364, or an administrative expense claim pursuant to 11 U.S.C. § 503, would be unsupported by law. *Id*. at 9-10.

On March 23, 2009, Lurgi filed the current action, seeking a stay of the Bankruptcy Court's Memorandum-Decision and Order of March 21, 2009. That same day, the District Court denied Lurgi's request and directed Lurgi to first present its request to the Bankruptcy Court. Later that day, Lurgi did so.

On March 24, 2009, the Bankruptcy Court denied Lurgi's motion for a stay. Generally, in its decision, the Bankruptcy Court found as follows: (1) Lurgi would not be irreparably harmed if the stay is denied because Lurgi is "getting the benefit of the bargain it struck," and "if
5

Lurgi is later, as a result of arbitration, found to have a claim against the Debtor, it will be treated equally with all other claims in accordance with the priorities set forth in the Bankruptcy Code"; (2) Lurgi failed to demonstrate that the harm it would suffer if the stay is denied outweighs the harm NEB would suffer if the stay is granted because the NEB is almost depleted of funds, and has ongoing expenses that it must pay "to encourage the best [facility sale] price possible for the benefit of all creditors . . ."; (3) Lurgi failed to demonstrate a substantial possibility of success on appeal because although "the parties' rights under the EPC Agreement are subject to arbitration[,]" letter of credit law applies to whether NEB may draw on the LOC, and Lurgi has not sufficiently plead fraud; and (4) Lurgi failed to demonstrate that a stay would serve the public interest because "denial of the stay will permit the sale to proceed." *See Lurgi, Inc. v. Northeast Biofuels*, No. 09-50012-mcr, Order Denying Stay Pending Appeal, at 3-6 (Bankr. N.D.N.Y. filed March 24, 2009) (Cangilos-Ruiz, J.).  Having unsuccessfully presented its request for a stay to the Bankruptcy Court, Lurgi refiled its motion for a stay with this Court.

Later that day on March 24, 2009, Chief United States District Judge Norman A. Mordue issued an Order granting Lurgi's motion for a stay.  Specifically, the Order stated that, "until further Order of this Court, [NEB] is hereby enjoined and/or restrained from drawing down on the Letter of Credit; and . . . that[,] until further Order of this Court, defendants are enjoined from taking any action that would diminish or impair the relief requested herein, including but not limited to presenting and/or honoring any draw certificates under the Letter of Credit."  (Dkt. No. 7 at 2.)

On March 25, 2009, Chief Judge Mordue reassigned this action to the undersigned for disposition.  That same day, the undersigned scheduled Lurgi's motion for a hearing, which was

held on March 30, 2009. In attendance at the hearing were counsel for Plaintiff and Defendants, counsel for Wilmington Trust, and counsel for the Official Committee of Unsecured Creditors. At the conclusion of the hearing, the undersigned reserved decision and stated that Chief Judge Mordue's stay of the Bankruptcy Decision would remain in place until issuance of a written decision. This is that written decision.

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review of Bankruptcy Court Decision Denying Stay

"In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and de novo review to conclusions of law." *Algonquin Power Income Fund v. Christine Falls of New York, Inc.*, 396 B.R. 106, 107 (N.D.N.Y. 2008) (Hurd, J.) [citations omitted].

### B.     Legal Standard Governing Motions for Stay Pending Appeal

The Second Circuit has established a four-pronged test for determining whether to grant a motion for a stay pending an appeal (including a motion for a stay made to a bankruptcy appellate panel): (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility (although less than a likelihood) of success on appeal, and (4) the public interests that may be affected. *In Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993); *accord*, *In re Country Squire Assoc. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996); *In re Turner*, 207 B.R. 373, 375 (B.A.P. 2nd Cir. 1997). This standard has rather routinely been applied to a motion for a stay of an order of a bankruptcy court, pending an appeal to a district court. *See*, *e.g.*, *In re Rossi*, 08-MC-0081, 2008 WL 4519008, at *1

(N.D.N.Y. Sept. 26, 2008) (Kahn, J.); *In re Brunswick Baptist Church*, 05-CV-1085, 2007 WL 294087, at *2 (N.D.N.Y. Jan. 25, 2007) (Kahn, J.).

"Failure to satisfy one prong of this standard for granting a stay will doom the motion." *In re Turner*, 207 B.R. 373, 375 (B.A.P. 2nd Cir. 1997), *accord*, *In re Bijan-Sara Corp.*, 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996); *In re Deep*, 288 B.R. 27, 30, (N.D.N.Y. 2003) (Kahn, J.); *Covanta Onondaga Ltd. P'ship v. Onondaga County Resource Recovery Agency*, 02-CV-0492, 2002 WL 31399797, *2 (N.D.N.Y. Oct. 24, 2002) (Munson, J.)  As a result, "[t]he moving party must show 'satisfactory' evidence on all four criteria."  *In re Bijan-Sara Corp.*, 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996); *accord*, *In re Albert*, No. 99-31520, 2002 WL 1432663, at *3 (Bankr. S.D.N.Y. June 20, 2002); *In re Frankel*, 192 B.R. 623, 630 (Bankr. S.D.N.Y. 1996); *In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53-54 (Bankr. S.D.N.Y. 1988).

### III.   ANALYSIS

#### A.   Request for Stay of that Part of the Memorandum-Decision and Order that Did Not Prohibit NEB from Drawing Down on the LOC

As explained above in Part II.B. of this Decision and Order, to obtain a stay, Lurgi must show satisfactory evidence of all four prongs of the *Hirschfeld* test.  Under the circumstances, the Court does not need to, and declines to, discuss whether Lurgi has shown satisfactory evidence of the first, second and fourth prongs regarding that part of the Memorandum-Decision and Order that refused to prohibit NEB from drawing down on the LOC.  This is because the Court finds (after carefully conducting the appropriate standard of review of the Bankruptcy Court's Order of March 24, 2009) that, with regard to the third prong, Lurgi has not shown a *substantial possibility* of success on its appeal from that part of the Memorandum-Decision and Order of March 21, 2009, that refused to prohibit NEB from drawing down on the LOC.

To succeed on its appeal from the Memorandum-Decision and Order of March 21, 2009 (which will be reviewed *de novo*), Lurgi would have to show (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation with a balance of hardships tipping decidedly in Lurgi's favor. With respect to element "(2)," the Court finds that Lurgi has shown neither (a) a likelihood of success on the merits on its request for an Order prohibiting NEB from drawing down on the LOC, nor (b) sufficiently serious questions going to those merits to make them fair ground for litigation with a balance of hardships tipping decidedly in Lurgi's favor.[2] This is because, as the Bankruptcy Court correctly observed in its Order of March 24, 2009, generally federal courts enjoin the drawing down of standby letters of credit only in narrow circumstances, where fraud in the transaction has been shown. *See Lurgi, Inc. v. Northeast Biofuels*, No. 09-50012-mcr, Order Denying Stay Pending Appeal, at 4-5 (Bankr. N.D.N.Y. filed March 24, 2009) (Cangilos-Ruiz, J.) (citing *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 250 [2d Cir. 1999]; *KMW Int'l Chase Manhattan Bank, N.A.*, 606 F.2d 10, 16 [2d Cir. 1979]).

Here, while Lurgi has alleged fraud *obliquely* in Paragraphs 38 and 47 of its Amended Complaint in the adversary proceeding, Lurgi has (on its motion for a stay before this Court) directed this Court to no record evidence of such fraud. (*See generally* Dkt. Nos. 1, 5, 16.) Rather, it appears to the Court that NEB is attempting to draw down on the LOC based on a good faith (although *perhaps* ultimately mistaken) belief that it is entitled to do so under Article 3.3(c) of the EPC Agreement. The Court notes that the EPC Agreement could have, but did not,

---

[2] Again, the Court does not need to, and declines to, discuss whether Lurgi has shown element "(1)" of the standard to obtain a preliminary injunction.

provide that the right to draw down on the LOC (as provided in Article 3.3[c]) may be exercised only after a breach and damages have been determined through arbitration (as provided in Articles 3.6 and 18.2).[3]

### B.  Request for Stay of that Part of the Memorandum-Decision and Order that Did Not Temporarily Segregate the Proceeds of the LOC (i.e., After the Draw-Down and Before Arbitration)

As an alternative form of relief, Lurgi requests that the Court stay that part of the Bankruptcy Court's Memorandum-Decision and Order that denied its request to segregate the proceeds of the LOC in order to secure its potential interest in the proceeds. (Dkt. No. 1, Part 1, at 15-16; Dkt. No. 5, Part 3, at 15-16.)

### 1.  Whether Lurgi Will Suffer Irreparable Injury Absent a Temporary Segregation of the LOC Proceeds

After carefully conducting the appropriate standard of review of the Bankruptcy Court's Order denying Lurgi's motion for a stay pending appeal, the Court concludes that Lurgi will indeed suffer irreparable harm absent a stay of that part of the Bankruptcy Court's Memorandum-Decision and Order that denied its request to temporarily segregate the proceeds

---

[3] The Court notes also that, in a brief filed on March 30, 2009 (and at a hearing on that same day), Lurgi argued–for the first time–that NEB's draw down on the LOC was fraudulent in that it was part of a knowing breach of New York State Lien Law. The Court exercises its discretion to consider this argument given (1) the brief opportunity Lurgi had to present its arguments to the Bankruptcy Court (due to the expedited nature of the adversary proceeding), and (2) the fact that this argument appears generally consistent with NEB's fraud argument presented to the Bankruptcy Court. However, the Court respectfully rejects this argument because of the lack of evidence (or factual allegations) that the draw down would constitute NEB's receipt of any of the seven categories of funds enumerated in the pertinent provision of the New York State Lien Law. *See* 32 N.Y. Lien Law § 70(5)(a)-(g) (McKinney's 2009); *In Andrew Valez Constr., Inc. v. Consol. Edison Co. of New York*, 373 B.R. 262, 279-81 (Bankr. S.D.N.Y. 2007); *Fehlhaber Corp. v. Levitt*, 315 N.Y.S.2d 169, 171-72 (N.Y. Sup. Ct., Albany County 1969).

of the LOC in order to protect its potential interest in those proceeds.  This is because, if NEB were to draw down on the LOC now and it were determined after arbitration that there had been no breach of the EPC Agreement by Lurgi, and/or damages owed by Lurgi to NEB, then Lurgi would be entitled to recover the proceeds of the LOC but would be unable to do so due to NEB's insolvency.  Simply stated, NEB's insolvency is Lurgi's irreparable harm.  *See Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999) (noting that irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied," and therefore exists in "situations involving obligations owed by insolvents.").[4]

### 2. Whether NEB Will Suffer Substantial Injury if the LOC Proceeds Are Temporarily Segregated

After carefully conducting the appropriate standard of review of the Bankruptcy Court's Order denying Lurgi's motion for a stay pending appeal, the Court concludes that NEB will

---

[4] *See also Rockwell Int'l Sys., Inc. v. Citibank, N.A.*, 719 F.2d 583, 586-88 (2d Cir.1983) (affirming injunction prohibiting Iranian bank from making demands under two letters of credit in light of effect of the Iranian revolution on availability of subsequent legal remedies); *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 07-CV-2005, 2007 WL 1580085, at *3 (E.D.N.Y. May 30, 2007) ("Monetary injury generally does not generally constitute 'irreparable harm', although 'an exception to this general rule has been recognized where the defendant is insolvent or insolvency is threatened.'") (quoting *Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, 1999 WL 993648, at *8 [S.D.N.Y. 1999]); *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp.2d 186, 194 (S.D.N.Y. 2007) ("[M]onetary injury may suffice to establish irreparable harm in situations 'where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state.'") (quoting *Bridgeport, Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 03-CV-0599, 2004 WL 840140, at *3 [D. Conn. Apr. 15, 2004] [internal quotation marks and citations omitted]); *Sea Carriers Corp. v. Empire Programs, Inc.*, 04-CV-7395, 2006 WL 3354139, at *4 (S.D.N.Y. Nov. 20, 2006); *Mitsubishi Power Sys., Inc. v. Shaw Group, Inc.*, 04-CV-1251, 2004 WL 527047, at *2 (S.D.N.Y. March 16, 2004) (recognizing limited exception to the general rule that a preliminary injunction is not warranted when monetary relief is requested "where insolvency is imminent").

suffer substantial injury if approximately $4.3 million of the LOC proceeds are temporarily segregated; however, the Court concludes that NEB will *not* suffer substantial injury if the remainder of the LOC proceeds (which total approximately $3.8 million) are temporarily segregated pending the appeal from the Bankruptcy Court's Memorandum-Decision and Order.

The Court reaches this conclusion for three reasons.  First, NEB has adduced evidence that, if it does not have rather immediate access to $4,308,100 of the LOC proceeds, it will not survive long enough to be auctioned off in approximately three weeks.[5]  Furthermore, Lurgi has not (during the current motion) directed the Court to any evidence contradicting NEB's evidence of a rather immediate need for access to $4.3 million.

Second, while NEB's evidence shows it has an immediate need for $4.3 million of the LOC proceeds, that evidence does not show that NEB has an immediate need for the remaining $3.8 million of the LOC proceeds.  (*Id.*)  Indeed, it appears to show the contrary.  (*Id.*)  Simply stated, according to NEB's own detailed calculations, the influx of $4.3 million from the draw down of the LOC will be sufficient to carry NEB through to auction.  (*Id.*)  The Court notes that it is unaware of any legal authority standing for the proposition that the *desire* of NEB's

---

[5]    Specifically, this evidence consists of the Declaration NEB Chief Financial Officer J. Michael Hadley, which was filed in the adversary proceeding.  This evidence also consists of an NEB spreadsheet entitled "8 Week Cashflow," which was introduced by Mr. Hadley as an exhibit at the Bankruptcy Court's hearing on Lurgi's motion for a stay, on March 24, 2009.  *See Lurgi, Inc. v. Northeast Biofuels*, No. 09-50012-mcr, Hearing on Motion to Stay (Bankr. N.D.N.Y. March 24, 2009).  That spreadsheet shows NEB's expected cashflow between March 1, 2009, and April 19, 2009, and takes into account (1) NEB's expected weekly cash receipts from the sale of corn inventory and ethanol, and (2) NEB's expected weekly disbursements utility payments, payroll and related costs, other direct material costs, general administrative expenses, professional fees (including attorney's fees in the Chapter 11 bankruptcy proceeding), and a "cushion."  That spreadsheet also shows that, on April 19, 2009, after expected receipts and disbursements, NEB will have a shortfall of approximately $4,308,100.

unsecured creditors (and/or its secured creditor) to have access to the $3.8 million in question at some later point in time confers on NEB a *substantial need* for that sum at this point in time.

Third, any injury that NEB suffers due to an inability to access the $3.8 million in question would be incurred only during the pendency of the stay, which will be very brief due to the expedited briefing schedule that the Court intends to impose in the bankruptcy appeal.

> 3. **Whether Lurgi Has Demonstrated a Substantial Possibility of Success on Appeal from the Denial of Its Segregation Request**

After carefully conducting the appropriate standard of review of the Bankruptcy Court's Order denying Lurgi's motion for a stay pending appeal, the Court concludes that Lurgi has demonstrated a substantial possibility of success on appeal from that part of the Bankruptcy Court's Memorandum-Decision and Order that denied its request for temporary segregation of any LOC proceeds to the extent that the request sought the temporary segregation of approximately $3.8 million of those proceeds.

For the sake of argument, the Court will assume that, for Lurgi to have succeeded on its request that the Bankruptcy Court segregate the proceeds of the LOC, Lurgi would have had to meet the standard governing a motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65, as opposed to the standard governing a motion for attachment or sequestration of the funds in question (which would have effectively converted NEB into a temporary involuntary stakeholder) pursuant to Fed. R. Civ. P. 64 and 67.[6]

As stated above in Part III.A. of this Decision and Order, to succeed on its appeal from

---

[6] *See In re Builders Transport, Inc.*, 471 F.3d 1178, 1186 (11th Cir. 2006) ("[T]he letter of credit serves, among other things, to shift the burden of litigation . . . . [The] beneficiary of the letter of credit holds the stake during the litigation. . . .").

13

the Bankruptcy Court's Memorandum-Decision and Order of March 21, 2009 (which will be reviewed *de novo*), Lurgi would have to show (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation with a balance of hardships tipping decidedly in Lurgi's favor.

With respect to element "(1)," the Court finds that Lurgi will indeed suffer irreparable harm absent a stay of that part of the Bankruptcy Court's Memorandum-Decision and Order that denied its request to temporarily segregate the proceeds of the LOC, for the reasons stated above in Part III.B.1. of this Decision and Order.

With respect to element "(2)," the Court finds that, regardless of whether or not Lurgi has shown a *likelihood* of success on the merits of its appeal from the denial of its segregation request, it has shown at least some record evidence of sufficiently serious questions going to the merits to make them fair ground for litigation with a balance of hardships tipping decidedly in Lurgi's favor. The Court notes that, while it is true that generally federal courts enjoin the drawing down of standby letters of credit only where fraud in the transaction has been shown, it is also true that such a fraud requirement (and "the doctrine of independence" from which is arises) applies only to the drawing down on a LOC and does not apply to claims of right to the proceeds of that LOC arising from the underlying contract.[7]

---

[7] *In re Bradlees Stores, Inc.*, 313 B.R. 565, 576 (S.D.N.Y. Aug 27, 2004) ("The Appellants' invocation of the doctrine of independence is inapposite here as the dispute in this litigation relates not to distribution of the proceeds of any of the Letters of Credit but to the underlying requirements which Appellants must fulfill for Bradlees to be obligated to pay [under the contract]."); *accord*, *In re Builders Transport, Inc.*, 471 F.3d at 1186 ("[T]he doctrine of independence protects only the distribution of the proceeds of the letter of credit. . . . [O]nce the proceeds of a letter of credit have been drawn down, the underlying contracts become pertinent in determining which parties have a right to those proceeds. In other words, an irrevocable standby letter of credit does not nullify the obligations set forth in the underlying contracts. . . .

The Court notes also that, at their core, the "merits" of Lurgi's claim against NEB in the underlying adversary proceeding do not sound in fraud but breach of contract: essentially, Lurgi claims that, after the parties' arbitration proceeding, it will be determined that Lurgi does not owe NEB any damages (whether it be $8.1 million or less) due to a breach of the EPC Agreement.[8] More importantly, there is at least *some* record evidence in support on that claim, given Lurgi's detailed and contemporaneous descriptions of how NEB had breached, or was breaching, the EPC Agreement so as to cause the plant to experience delays and additional costs.[9]

---

Here, BTI . . . challenges the right of CIT to retain the letter of credit proceeds pursuant to the underlying contract between BTI and Two Trees . . . . The doctrine of independence is therefore inapplicable."); *In re Papio Keno Club, Inc.*, 262 F.3d 725, 731 (8th Cir. 2001) ("The independence principle protects only the distribution of the proceeds of the letter of credit . . . and does not address claims respecting the underlying contract. . . . Here, Papio Keno claimed the City had no right to retain liquidated damages under the lottery agreement, an action on the underlying contract, which has nothing to do with the doctrine of independence."); *In re Graham Square, Inc.*, 126 F.3d 823, 827-28 (6th Cir. 1997) ("[T]he doctrine of independence protects only the distribution of the proceeds of the letter of credit. It . . . does not address claims respecting the underlying contract. . . . It is one thing to attempt to prevent the distribution of the proceeds of a letter of credit, an attempt the doctrine of independence is designed to prevent; but it is quite another to bring an action on the underlying contract that created the letter of credit. . . ."); *In re Hechinger Investment Co. of Delaware, Inc.*, 2001 WL 1820320, at *2 (Bankr. D.Del. Jan 29, 2001) ("While I agree that the doctrine of independence may have prevented Hechinger from enjoining the distribution of the LOC Proceeds . . ., I do not agree that it likewise prohibits Hechinger from asserting its rights under the Lease. . . . Newcourt is raising its defense under the Letter of Credit, i.e., its contract with Bank Boston, as a defense to Hechinger's challenge under the Lease, i.e., its contract with Hechinger. The doctrine of independence applies to the former, but not to the latter.").

[8] For example, in Paragraph 31 of its Amended Complaint in the underlying adversary proceeding, Lurgi alleges as follow: "There are significant disputes under the EPC Agreement regarding the parties' performance under the contract. Lurgi has substantially complied with all of its contractual obligations and believes that it will be successful in demonstrating its entitlement to payments due by NEB under the EPC Agreement and the resulting change orders, and that NEB is in breach of the agreement. NEB may not therefore make a draw on the LOC when Lurgi is not in 'breach' of the Agreement." (Dkt. No. 7, ¶ 31.)

[9] *See Lurgi, Inc. v. Northeast Biofuels*, No. 09-50012-mcr (Bankr. N.D.N.Y.) (Dkt. No. 5 [Decl. Sharon Bell]; Dkt. No. 5 [Exh. C]; Dkt. No. 8 [Exh. B]; Dkt. No. 8 [Exh. D]; Dkt.

Finally, the Court finds that a balance of hardships tip decidedly in Lurgi's favor with regard to its request for temporary segregation to the extent that the request sought the temporary segregation of approximately $3.8 million of the proceeds of the LOC. The Court makes this finding for the reasons stated above in Parts III.B.1. and III.B.2. of this Decision and Order.[10]

### 4.     The Public Interests that May Be Affected

After carefully conducting the appropriate standard of review of the Bankruptcy Court's Order denying Lurgi's motion for a stay pending appeal, the Court concludes that the public interest weighs in favor of granting a brief stay of the Bankruptcy Court's denial of Lurgi's request for temporary segregation to the extent that the request sought the temporary segregation of approximately $3.8 million of the proceeds of the LOC.

Granted, there is a public interest in operating this particular ethanol plant during the period of time leading up to this Court's decision on the bankruptcy appeal. However, the Court is aware of no record evidence that such a public interest would be undermined by briefly segregating approximately $3.8 million of the LOC proceeds, while releasing $4.3 million of the LOC proceeds to NEB.

In any event, segregating the funds would further the public interest favoring arbitration

---

No. 8 [Exh. E]; Dkt. No. 14 [Exh. C]; Dkt. No. 28 [Exh. 4]).

[10]     The Court notes that, given the absence of risk of monetary loss to NEB resulting from the segregation of the $3.8 million in question, and given the liquidity of the $3.8 million to be deposited with the Clerk's Office, good cause exists to waive a bond requirement under the circumstances. *See Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 110 (3d Cir. 1988) (noting that an exception to the bond requirement under Fed. R. Civ. P. 65[c] exists "where there is no risk of monetary loss to the [party enjoined]"); *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (9th Cir. 1964) ("Under [Fed. R. Civ. P. 65(c)], the trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary.").

agreements and proceedings (and the public interest in not letting them be rendered futile intentionally and unnecessarily by one of the parties). Such segregation would also further the public interest in keeping this particular ethanol-plant contractor from suffering unnecessary financial losses, so that it can keep constructing ethanol plants.

      **C.**    **Request for Stay of Those Parts of the Memorandum-Decision and Order that Denied Lurgi's Request for Two Remaining Alternative Forms of Relief**

Finally, to the extent that Lurgi also implicitly requests a stay of those parts of the Memorandum-Decision and Order that denied Lurgi's request for its two remaining alternative forms of relief, that request is denied as waived and/or moot.[11]

**ACCORDINGLY**, it is

**ORDERED** that Lurgi's motion, pursuant to Fed. R. Bankr. P. 7062 and 8005, for a stay (pending an appeal to this Court) of the Memorandum-Decision and Order of the Bankruptcy Court of March 21, 2009 (Dkt. No. 5), is **DENIED in part and GRANTED in part**, as set forth above in this Decision and Order; and it is further

**ORDERED** that NEB may draw down on the referenced Letter of Credit; and it is further

**ORDERED** that, to the extent that NEB draws down on the Letter of Credit in excess of $4,308,100 (the "excess amount"), NEB must immediately deposit that excess amount with the

---

[11] These two remaining alternative forms of requested relief are as follows: (1) an Order granting Lurgi a claim for a super-majority unsecured administrative expense pursuant to 11 U.S.C. § 364(c) in the cumulative amount of the draw-downs; and (2) an Order granting Lurgi a claim for an administrative expense pursuant to 11 U.S.C. § 503 in the cumulative amount of the draw-downs.

commercial registry interest-bearing account of the Clerk of this Court.[12]  If the Order of the Bankruptcy Court is affirmed, the Court shall promptly release that excess amount to NEB.  If the Order of the Bankruptcy Court is reversed, that excess amount will remain with the Court pending the decision in the arbitration proceeding.

Dated: April 2, 2009
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[12]     The Court notes that, assuming NEB draws down on the entire Letter of Credit, and assuming that the value of that Letter of Credit is approximately $8,111,994.69, the excess amount to be deposited with the Clerk's Office would be approximately $3,803,894.69.